**Jared Lloyd SHANKLIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–03–00998–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 29, 2005.

Brian W. Wice, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.—Harris County, and Donald W. Rogers, Jr., Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

TIM TAFT, Justice.

A jury convicted appellant, Jared Lloyd Shanklin, of murder and assessed his punishment at 60 years in prison. We determine (1) whether appellant's defense counsel rendered ineffective assistance of counsel during the guilt-innocence and punishment stages of trial and (2) whether the trial court improperly admitted the trial prosecutor's affidavit at the hearing

on appellant's motion for new trial. We affirm the conviction, but reverse and remand the cause for a new punishment hearing.

## Background

On November 18, 2002, appellant and his friends, John Shanklin and Darrell Willis, went to a night club. While in the night-club, appellant and the complainant got into an altercation. When the night club closed, appellant and the complainant met outside and continued their argument. The altercation ended when appellant shot the complainant two times at close range, killing him. Shortly thereafter, police on the scene arrested appellant.

At trial, appellant raised the defenses of self-defense and defense of a third person. After the jury convicted him of murder, appellant filed a motion for new trial alleging ineffective assistance of counsel. The trial court conducted the motion for new trial hearing by affidavits. Appellant's defense counsel filed an affidavit stating that a number of his decisions provided ineffective assistance of counsel and were not the result of any reasoned trial strategy. The State filed a controverting affidavit executed by the trial prosecutor. At the end of the hearing, the trial court overruled appellant's motion for new trial.

## Ineffective Assistance of Counsel at Trial

In his first point of error, appellant argues that his defense counsel rendered ineffective assistance of counsel during the guilt-innocence stage of trial. Specifically, appellant argues that the following actions demonstrate ineffective assistance: (1) defense counsel failed to request the lesser included offenses of manslaughter and aggravated assault; (2) defense counsel did not elicit testimony from appellant that appellant was not trying to kill anyone;

and (3) defense counsel failed to properly object to the State's closing argument.

## A. Standard of Review

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon 1977). This right includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex.Crim.App.1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92, 104 S.Ct. at 2064–67; *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). Appellant has the burden of proving his claim by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim.App.1998). We apply a strong presumption that trial counsel was competent. *Thompson*, 9 S.W.3d at 813. We presume counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). We analyze appellant's ineffective assistance of counsel issue as a challenge to the denial of his motion for new trial. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex.Crim.App. 2004) (holding appropriate standard of review for ineffective assistance claim based upon affidavits brought forth in motion for new trial is abuse of discretion). In such circumstances, we review the *Strickland* test through an abuse of discretion standard. *Id.* at 208. Thus, we reverse only if

the trial court's decision is arbitrary or unreasonable, viewing the evidence in the light most favorable to the ruling.

## B. Lesser Included Offenses

### 1. Manslaughter

■ In his first sub-point of his first point of error, appellant argues that his defense counsel should have requested an instruction on the lesser included offense of manslaughter and that his failure to do so was ineffective assistance of counsel. He contends that defense counsel's affidavit demonstrates that his decision not to request the lesser offense was not the result of trial strategy.

■ To establish his claim that defense counsel's performance was deficient for failing to request an instruction on the lesser included offense of manslaughter, appellant must show that he was entitled to the instruction. *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex.Crim.App.1999). A defendant is entitled to an instruction on a lesser included offense when the proof for the offense charged includes the proof necessary to establish the lesser included offense, and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser included offense. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim.App.1994) (citing *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App. 1993)). Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Bignall*, 887 S.W.2d at 23.

■ A conviction for manslaughter requires a finding that the defendant recklessly caused the decedent's death. Tex. Pen.Code Ann. § 19.04 (Vernon 2003). "A person acts recklessly, or is reckless, with respect to ... the result of his conduct when he is aware of but consciously disre-

gards a substantial and unjustifiable risk that ... the result will occur." Tex. Pen. Code Ann. § 6.03(c) (Vernon 2003). A manslaughter charge is required if there is any evidence from which a jury could conclude the defendant did not intentionally or knowingly kill an individual, but consciously disregarded a substantial and unjustifiable risk that the result would occur. *Lugo v. State*, 667 S.W.2d 144, 147 (Tex. Crim.App.1984). "[A] defendant may be shown to be guilty only of the lesser offense if the evidence presented is subject to different interpretations." *Saunders v. State*, 840 S.W.2d 390, 392 (Tex.Crim.App. 1992). Moreover, it is immaterial whether the evidence fits within the larger theme of the defendant's testimony, whether it was admitted by the State or the defense, and whether it is "strong or weak, unimpeached or contradicted." *Jones v. State*, 984 S.W.2d 254, 257 (Tex.Crim.App.1998).

Neither of the parties disputes that manslaughter is a lesser included offense of murder. *See Schroeder v. State*, 123 S.W.3d 398, 400 (Tex.Crim.App.2003). We thus determine if there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser included offense of manslaughter. *See Bignall*, 887 S.W.2d at 23.

In *Hernandez v. State*, appellant testified that although he shot and killed the deceased, he did not intend to hit the deceased, but rather tried to scare him away. 742 S.W.2d 841, 842–43 (Tex.App.-Corpus Christi 1987, no pet.). The court of appeals held that this evidence was sufficient to warrant an instruction on manslaughter. *Id.* at 843.

The facts here are similar to those in *Hernandez*. Appellant testified that while a group of men were hitting his friend, he shot in the group's direction. He also stated, "I knew that I couldn't go over

there and physically fight with him. So I felt like that was the only thing I could do is shoot in that direction and scatter everything and just calm it down so I could give him the chance to get away from all of that." Appellant further stated that he shot while he was getting up from the ground and that he was not sure whether he shot high or low. He also admitted that he could have shot his friend because he was not sure of where he was aiming. Appellant was asked, "you weren't shooting at anybody, were you?" To which appellant responded, "No." He agreed that he was just shooting into the crowd blindly. After he shot, appellant did not realize that he had shot anyone.

In light of the testimony presented, we hold that there is some evidence that appellant acted recklessly and that the jury could have rationally found that appellant, if guilty, was guilty only of manslaughter. *See Hernandez*, 742 S.W.2d at 843. Construed in the light most favorable to appellant, the evidence presented shows that appellant did not intend to kill the complainant, but rather to scatter the group of men who were hitting his friend. Accordingly, we conclude that appellant was entitled to an instruction on the lesser included offense of manslaughter.

■ In addition to showing that he was entitled to the lesser included offense, however, appellant must show that his defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688–92, 104 S.Ct. at 2064–67. We presume counsel's actions and decisions were reasonably professional and motivated by

sound trial strategy. *Jackson*, 877 S.W.2d at 771.

At the motion for new trial hearing, appellant's defense counsel submitted an affidavit that stated that his failure to request the lesser included offense of manslaughter was not the result of any reasoned trial strategy. We have recently held that such an affidavit from defense counsel defeats the presumption that defense counsel was employing a reasonable trial strategy. *See Biagas v. State*, 177 S.W.3d 161, 170–71 (Tex.App.-Houston [1st Dist.]2005, pet. ref'd). Although defense counsel's affidavit rebuts the presumption that defense counsel had a reasonable strategy in choosing his course of action, appellant must still show that his defense counsel rendered a deficient performance. *See Strickland*, 466 U.S. at 688–92, 104 S.Ct. at 2064–67.

[6] We cannot conclude that defense counsel acted deficiently in failing to request the lesser included offense of manslaughter. Although defense counsel stated that his failure to request this lesser included offense was not the result of trial strategy, his affidavit provides no explanation regarding why he chose not to ask for the lesser offense and no live testimony was presented on this issue. We assume a strategic motive if any can be imagined; and we find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *See Bone v. State*, 77 S.W.3d 828, 833–34 n. 13 (Tex.Crim.App. 2002).

■ As the State points out, appellant's defense counsel may have decided not to ask for the lesser included offense because he did not want the jury to consider inconsistent defenses [1]—defense of a third per-

---

1. It is permissible for the accused to have the jury decide between inconsistent defensive theories, even when they might directly contradict one another. *Warren v. State*, 565 S.W.2d 931, 933 (Tex.Crim.App.1978). Nev-

son and manslaughter—each of which requires a different mens rea. Self-defense and defense of a third person require an intentional or knowing intent; manslaughter requires reckless intent. *See* TEX. PEN. CODE ANN. §§ 9.31, 9.33, 19.04 (Vernon 2003). Here, the evidence raised the issues of self-defense and defense of a third person, and the jury received instructions on these defenses. By not asking for an instruction on the lesser included offense of manslaughter, the jury could convict appellant of murder, find that he acted in self-defense of himself or of a third party and acquit, or find him not guilty and acquit. This strategy is known as pursuing an all-or-nothing strategy. *See Lynn v. State*, 860 S.W.2d 599, 603 (Tex.App.-Corpus Christi 1993, pet. ref'd). Defense counsel does not act deficiently in failing to request a lesser included offense if he was pursuing an all-or-nothing trial strategy. *See Ex Parte White*, 160 S.W.3d 46, 55 (Tex.Crim.App.2004); *Lynn*, 860 S.W.2d at 603 (requiring a jury to opt between murder and acquittal, although risky, is sometimes successful). We therefore conclude that defense counsel's decision not to request the lesser included offense of manslaughter was not so outrageous that no competent attorney would have engaged in it. *See Bone*, 77 S.W.3d at 833–34 n. 13.

We also observe that there were good reasons for defense counsel to pursue an all-or-nothing strategy in this case, the most important of these is that the facts were more consistent with an intentional killing in defense of self and others. The record shows that the complainant was shot twice at close range; one bullet entered his head traveling slightly upward, and one bullet entered his abdomen traveling slightly downward. Thus, the shooting itself was more consistent with appellant intentionally shooting the complainant,

rather than shooting blindly toward a crowd. Appellant told his brother, John, at the station shortly after the offense that he had shot the complainant in self-defense. Appellant told Officer Moreno that he felt he was defending Darrell Willis, a very sympathetic victim because of his disability. Thus, the record supports defense counsel's not having requested a lesser instruction for manslaughter.

■ Moreover, the trial court has "discretion to discount factual assertions in an affidavit by an interested party." *Charles*, 146 S.W.3d at 210. The trial judge may view defense counsel's affidavit with skepticism because it was not supported by any offer of live testimony, subject to cross-examination. *See id.* at 213. As an appellate court, we must defer to the trial court's ruling to the extent that any reasonable view of the record evidence supports the ruling. *Id.* at 212. Here, because the trial court could disbelieve defense counsel's affidavit, by finding that defense counsel was employing a reasoned trial strategy, we conclude that the trial court did not abuse its discretion in denying appellant's motion for new trial.

We overrule appellant's first sub-point of his first point of error.

### 2. Aggravated Assault

■ In his second sub-point of his first point of error, appellant argues that his defense counsel should have requested the lesser included offense of aggravated assault. At trial, there was no dispute that appellant caused the death of the complainant. A murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him to be guilty of a murder. *Forest v. State*, 989 S.W.2d 365, 368 (Tex.Crim.App.1999). Because there

ertheless, it may not be sound strategy to

present inconsistent defenses.

was no evidence from which a rational jury could conclude that appellant did other than cause the death of the complainant, appellant cannot satisfy the second, "guilty only," prong of the *Royster* test. *See Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim.App.1981). Thus, appellant's defense counsel did not act deficiently in failing to request the lesser included offense of aggravated assault. *See Jackson v. State*, 992 S.W.2d 469, 474–75 (Tex.Crim.App. 1999). The trial court did not abuse its discretion in denying appellant's motion for new trial on this basis.

We overrule appellant's second sub-point of his first point of error.

### C. Failure to Elicit Testimony

▇▇▇ In his third sub-point of his first point of error, appellant argues that his defense counsel provided ineffective assistance by not eliciting testimony regarding appellant's lack of intent to kill. Appellant asserts that his defense counsel knew before trial that appellant did not intend to kill anyone when he fired his gun. Appellant maintains that if this key piece of evidence had been elicited, the testimony would have raised the lesser included offenses of manslaughter and aggravated assault. Appellant specifically contends that:

> In the event this Court finds that Appellant's testimony did not raise the lesser offenses of manslaughter and/or murder [sic], [we] must find that defense counsel's failure to elicit from Appellant that he did not intend to kill anyone when he fired, having been put on notice of this fact in advance of trial, was objectively deficient conduct that was not, by his own admission, the result of any reasoned trial strategy.

Having concluded that appellant was not entitled to an instruction on aggravated assault and that defense counsel had a sound strategy for not requesting an instruction on manslaughter, it would have been inconsistent with appellant's defenses of self-defense and defense of a third party to present evidence that appellant did not intend to shoot the complainant. Therefore, defense counsel was not deficient for not eliciting such evidence.

We overrule appellant's third sub-point of his first point of error.

### D. Improper Closing Argument

▇▇▇ In his fourth sub-point of his first point of error, appellant argues that his defense counsel rendered ineffective assistance of counsel by failing to specifically object to the State's closing argument. Appellant asserts that the following closing argument by the State was improper:

> **State:** Now, if you believe that he's getting beat up and his friends are getting beat up by all those people, you've got to figure out, could he retreat and was deadly force being used against him?
>
> Still the answer is, no, there was no deadly force being used against him or Darrell.
>
> **Defense counsel:** Judge, I would have to object again.
>
> **Court:** Counsel, this is closing arguments. You're overruled.
>
> **Defense counsel:** May I state my objection?
>
> **Court:** Counsel, privately you can; but you're just making arguments before the jury and you've made your argument.

After the jury went to deliberate, appellant's defense counsel stated:

> **Defense Counsel:** The objection was just that it was a misstatement of the law in that in protecting a third party, the defendant has no duty to retreat. And she said that he does. In pro-

tecting a third party, the defendant does not have a duty to retreat. In fact, it's reversible error to even put it in the charge.

**Court:** So what are you asking me to do?

**Defense Counsel:** Well, I wanted to make the objection, then. I don't know what we can do now.

**Court:** Well, I mean, I don't know. I've heard your objection. What do you want me to do?

**Defense Counsel:** Well, it's in the record. That's all I can do.

**Court:** Okay. It's in the record.

Appellant asserts that the State's closing argument incorrectly stated the law of defense of a third person. *See* TEX. PEN.CODE ANN. § 9.33 (Vernon 2003). Appellant argues that he was prejudiced because defense counsel allowed the "prosecutor to denigrate the defensive theory that he did raise—defense of a third person—by failing to take prompt corrective action when she misstated the law impacting it."

 Proper jury argument generally falls into one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responsive arguments; and (4) pleas for law enforcement. *See Coble v. State,* 871 S.W.2d 192, 204 (Tex.Crim.App.1993). Jury argument exceeding these bounds constitutes error. *Id.*

The State does not contest that the prosecutor misstated the law as it relates to defense of a third person, but argues that any error was caused by the trial court and not by appellant's defense counsel. Nevertheless, we cannot conclude that the State misstated the law during closing argument. The statement made by the State listed one of the elements of self-defense. *See* TEX. PEN.CODE ANN. § 9.32 (Vernon 2003). The evidence raised

the issue of self-defense, and the jury charge included an instruction on self-defense. The State was entitled to argue that appellant did not retreat in regard to self-defense. Although the prosecutor's argument combined self-defense and defense of a third party, the retreat portion was used only in application of the self-defense theory, "you've got to figure out, could he retreat and was deadly force being used against him." Accordingly, appellant has not shown that defense counsel acted deficiently.

We overrule appellant's fourth sub-point of his first point of error.

### Ineffective Assistance At Punishment Stage

 In his second point of error, appellant argues that his defense counsel provided ineffective assistance of counsel during the punishment stage of trial. Specifically, appellant argues that defense counsel failed to investigate 20 potential witnesses or to call them to testify during the punishment stage of trial.

At the motion for new trial hearing, appellant proffered 20 affidavits from witnesses who were willing to testify on his behalf. The affidavits were by appellant's mother, father, sister, brother, fiancee, counselor, aunt, and friends. Nearly all affidavits represented that the witnesses would have testified that they had known appellant for various lengths of time, they were never contacted by appellant's defense counsel, they would have testified had they been requested to, and they would have asked the jury to consider the minimum punishment. Most of the witnesses also stated that they were aware of appellant's previous record and that this knowledge would not have affected their testimony.

Appellant's defense counsel also submitted an affidavit at the motion for new trial hearing. His affidavit stated that he "did not conduct any meaningful investigation as regards [to] the punishment stage of [appellant's] case." He further testified that he knew that appellant's mother, father, fiancee, and business partner were available to testify, but he neither interviewed them nor called any of them to testify. Although he does not articulate a reason for not interviewing or calling any witnesses to testify besides appellant, he concludes that his failure to conduct an investigation of the witnesses or call any of them to testify was not the result of any reasoned trial strategy.

Relying on *Ortiz v. State*, 866 S.W.2d 312, 315 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd), the State responds that defense counsel's choice of which witnesses to call is trial strategy. The State asserts that defense counsel's decision to call only appellant to testify was sound trial strategy because it focused the jury's attention on appellant's testimony. In *Ortiz*, the trial court conducted a non-jury punishment hearing in which the court had before it a pre-sentence investigation report containing many letters from friends and relatives attesting to appellant's good character. *See id.* at 315. The Fourteenth Court of Appeals found no ineffective assistance when defense counsel called only the appellant to testify at the punishment hearing. The facts in this case are clearly distinguishable from the facts in *Ortiz*. Here, punishment was assessed by a jury, and the jury did not have the benefit of a sentencing report containing any letters from appellant's friends and family.

The facts of this case are much more analogous to the facts in *Milburn v. State*, 15 S.W.3d 267 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). In *Milburn*, the motion for new trial hearing demonstrated that defense counsel decided not to interview or call any witnesses because of trial strategy—namely, in his experience, juries do not place much weight on the testimony of family members. *Id.* at 270. The evidence showed that 20 witnesses were available to testify for appellant; defense counsel never interviewed them or asked them to testify; they would have testified if asked; and they would have asked the jury to consider a minimum sentence. These witnesses were also aware of appellant's probation and stated that their testimony would not have changed as a result. The court of appeals rejected defense counsel's reason as sound trial strategy and held that defense counsel's performance at the punishment phase fell below the professional norm of reasonableness. *Id.* at 271.

We agree with the State that the decision whether to present witnesses is largely a matter of trial strategy. *See Rodd v. State*, 886 S.W.2d 381, 384 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). Moreover, an attorney's decision not to present particular witnesses at the punishment stage may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful, to the defendant. *See Weisinger v. State*, 775 S.W.2d 424, 427 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd) (holding that it is trial counsel's prerogative, as a matter of trial strategy to decide which witnesses to call). However, a failure to uncover and present mitigating evidence cannot be justified as a tactical decision when defense counsel has not conducted a thorough investigation of the defendant's background. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Rivera v. State*, 123 S.W.3d 21, 31 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). The record here clearly shows that

defense counsel not only failed to call any other witnesses besides appellant, but also did not investigate punishment witnesses to determine whether they could provide meaningful testimony. We thus follow *Wiggins, Rivera,* and *Milburn* and agree that defense counsel's failure to investigate and call any punishment witnesses amounts to deficient performance. Accordingly, appellant has satisfied the first prong of *Strickland.*

■ We must now determine the prejudicial impact of defense counsel's deficient performance under the second prong of *Strickland,* specifically whether there is a reasonable probability that the jury's assessment of punishment in this case would have been less severe in the absence of defense counsel's deficient performance. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Rivera,* 123 S.W.3d at 32.

During the punishment phase of trial, the State presented the testimony of Cassandra Sampson, the complainant's aunt. She explained how the complainant's death had devastated the family and testified that it was a very difficult time. She also testified that the complainant left three surviving children. The State then offered a stipulation of evidence concerning appellant's criminal history. After the State rested, defense counsel called appellant to testify. Appellant testified that he was sorry for what had happened and sorry to have put his family through this ordeal. Defense counsel called no other witnesses to testify on appellant's behalf. He did, however, introduce exhibit two, an order dismissing a former cause and terminating probation.

The State emphasized during closing argument that appellant should not receive probation because he had not abided by it before. The State did not suggest a specific amount of penitentiary time, but did argue that 25 to 35 years was not enough.

Defense counsel then made a closing argument to the jury. In his closing argument, defense counsel emphasized that the jury could sentence appellant from 5 to 99 years or grant probation. He asked the jury to consider a punishment on the lower end of the range. The jury heard no favorable character evidence or otherwise mitigating evidence; it returned a sentence on the high end of the sentencing range and nearly twice as high as the number of years mentioned by the State. *See Milburn,* 15 S.W.3d at 270.

■ The sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus. *See Vela v. Estelle,* 708 F.2d 954, 966 (5th Cir.1983). In this case, defense counsel presented no evidence of mitigating factors for the jury to balance against the aggravating factors presented by the State. By his own admission, defense counsel did not investigate any possible mitigating factors and failed to contact even a single family member or friend, despite knowing that favorable witnesses were available to testify. As noted in our discussion of the first prong of *Strickland,* there were no fewer than 20 witnesses available to testify on appellant's behalf. These witnesses would have testified that appellant took great care of his son, helped his friends and relatives, and worked hard. This evidence would have shown the jury that he also had good character traits.

We conclude that appellant has demonstrated prejudice in this case, even though we cannot say for certain that appellant's character witnesses would have favorably influenced the jury's assessment of punishment. *See Milburn,* 15 S.W.3d at 271. We have no doubt, however, that defense counsel's failure to interview or call a single witness, other than appellant, deprived him of the possibility of bringing out even

a single mitigating factor. *See id.* Mitigating evidence clearly would have been admissible. *See Rivera,* 123 S.W.3d at 30. The jury would have considered it and possibly have been influenced by it. *See id.*

We conclude that a reasonable probability exists that appellant's sentence would have been less severe had the jury balanced the aggravating and mitigating circumstances. Accordingly, appellant has shown that he was actually and substantially prejudiced by his defense counsel's complete failure to seek out and present any mitigating character evidence. *See Milburn,* 15 S.W.3d at 271; *see, e.g., Blake v. Kemp,* 758 F.2d 523, 534–35 (11th Cir. 1985); *Ex parte Felton,* 815 S.W.2d 733, 737 n. 4 (Tex.Crim.App.1991).

We sustain appellant's second point of error.

### Admission of Evidence at Motion for New Trial Hearing

In his third point of error, appellant argues that the trial court improperly admitted evidence during the motion for new trial hearing. Specifically, appellant argues that the trial court erred when it admitted the prosecutor's affidavit. Appellant argues that, had the evidence not been admitted, the trial court would have granted the motion for new trial.

At the motion for new trial hearing, the State offered the trial prosecutor's affidavit.[2] Even before an objection had been lodged, the trial court admitted that it had read the affidavit. Appellant then asserted the following objection:

[U]nder Rules 401 and 402, certainly Ms. Hartman's affidavit is irrelevant in the sense that it makes no fact more or

less likely as a consequence to this proceeding. She has no personal knowledge of any of the operative facts that impact the consideration of the issues before the Court today to the extent that she asserts that trial counsel is, quote, not candid, close quote, about his assertion.

The Court is well aware that in *Schutz v. State,* and 50 other cases, it is improper for one witness to give his or her opinion to the truthfulness of another witness' testimony. It is clearly speculative.

Her testimony as to Mr. Richardson's purported trial strategy is, again, without foundation. Certainly it makes no fact at issue more or less likely and doesn't even provide a nudge in that direction, which is the standard review for relevancy. I would object to it under those bases, Your Honor.

The trial court overruled appellant's objections.

The decision on a motion for new trial rests within the sound discretion of the trial court and, in the absence of an abuse of discretion, should not be reversed. *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993). In considering a motion for new trial, the trial court possesses broad discretion in determining the credibility of the witnesses and in weighing the evidence to determine whether a different result would occur upon retrial. *Dusenberry v. State,* 915 S.W.2d 947, 949 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd); *Messer v. State,* 757 S.W.2d 820, 827 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd) (opinion on reh'g). The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused

---

**2.** At a motion for new trial hearing, the court may receive evidence by affidavit or otherwise. *See* Tex.R.App. P. 21.7. Also, the State may oppose in writing any reason the defendant sets forth in the motion for new trial. Tex.R.App. P. 21.5.

or any defense witness simply because it was uncontradicted. *Messer,* 757 S.W.2d at 828. The admission of evidence is a matter within the discretion of the trial court. *See Montgomery v. State,* 810 S.W.2d 372, 378–79 (Tex.Crim.App.1990) (opinion on reh'g). Accordingly, the trial court's admission of evidence is reviewed under an abuse of discretion standard. *See id.* at 379–80. As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Rachal v. State,* 917 S.W.2d 799, 807 (Tex.Crim.App.1996); *Montgomery,* 810 S.W.2d at 391. The trial court is not required to believe factual statements contained within an affidavit, even when they are uncontradicted by other affidavits. *See State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000) (stating that a trial judge may disbelieve even uncontradicted testimony).

On appeal, appellant asserts that the trial court erred in admitting the prosecutor's affidavit under Rules 401, 402, 602, 701 and 702. *See* TEX.R. EVID. 401, 402, 602, 701, 702. To preserve a complaint for appellate review, appellant must provide a timely and specific objection. *See* TEX. R.APP. P. 33.1(a). Without a specific objection made to the trial court, nothing is preserved on appeal. *See id.* After reviewing appellant's objection during the motion for new trial hearing, we conclude that appellant has preserved only his Rule 401, 402, and 602 objections.

### A. Rules 401 and 402

 Evidence is relevant under Rule 401 if it "influences consequential facts, i.e., facts which have something to do with the ultimate determination of guilt or innocence in a particular case." *Mayes v. State,* 816 S.W.2d 79, 84 (Tex.Crim.App. 1991). Appellant did not expressly direct the trial court to the particular statement within the affidavit that he asserts was irrelevant on Rule 401 grounds. In the absence of any request to limit the scope of the affidavit we will uphold the trial court's ruling if any of the material in the affidavit is relevant. *See* TEX.R. EVID. 105(a).

The prosecutor pointed out that a possible sound trial strategy regarding lesser included offenses would have been not to ask for contradictory defenses. In this opinion, we have held that appellant's defense counsel was not deficient for failing to ask for jury instructions on the lesser included offense of manslaughter so as not to present inconsistent defenses to the jury. We conclude the affidavit has some relevance and thus admissible pursuant to Rule 402. *See* TEX.R. EVID. 402. Accordingly, the trial court did not abuse its discretion in overruling appellant's Rule 401 and 402 objections.

### B. Rule 602

Appellant also argues that the affidavit violates Rule 602. *See* TEX.R. EVID. 602. Rule 602 provides,

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

TEX.R. EVID. 602.

Appellant contends that many of the prosecutor's statements in her affidavit were "rank speculation." Although some of the statements in the affidavit were undoubtedly made without personal knowledge, other statements comply with Rule 602. For example, the prosecutor informed the trial judge, who was not the

same judge who presided over appellant's trial, that defense counsel received instructions on self-defense and defense of a third party. The prosecutor also informed the trial judge that defense counsel did object to her closing argument, and in any event, the jury charge correctly explained the law to the jury. Because appellant did not specifically object to certain portions of the affidavit or attempt to excise that which did not comply with the rules, the entire affidavit is admissible if any portion of it is relevant. *See Biagas*, 177 S.W.3d at 173; *see also Troff v. State*, 882 S.W.2d 905, 910 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd) ("When an exhibit contains both admissible and inadmissible evidence, the objecting party must specifically point out the inadmissible evidence."); *Pinkney v. State*, 848 S.W.2d 363, 367 (Tex.App.-Houston [1st Dist.] 1993, no pet.). We conclude that portions of the prosecutor's affidavit were made with personal knowledge, and therefore, the trial court did not abuse its discretion in overruling appellant's Rule 602 objection. We conclude that the trial court did not abuse its discretion in admitting the prosecutor's affidavit.

We overrule appellant's third point of error.

## Conclusion

We affirm the judgment of the trial court, which finds appellant guilty of murder. Because we conclude that appellant's defense counsel provided ineffective assistance of counsel during the punishment phase of trial, we reverse the judgment of the trial court and remand the cause for a new punishment hearing pursuant to article 44.29(b) of the Texas Code of Criminal

Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2005).

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

I respectfully dissent. I agree with the majority that appellant is entitled to a new hearing on punishment. However, I do not see how the jury could appropriately assess punishment without retrial of the merits, particularly when appellant's trial counsel took the strategically risky route of failing to seek an instruction on manslaughter, a lesser included offense supported by the record that has a much lower punishment range than murder. I find it impossible to say with any degree of certainty that the jury would have convicted appellant of murder, as opposed to manslaughter, and sentenced him to 60 years in prison when the jury was offered neither the opportunity to consider the lesser included offense nor any of the mitigating evidence available to the defense. I believe appellant's trial counsel's strategy, if any, was unreasonable as a matter of law at both the trial and the punishment stage.

In addition, I believe the trial court erred in admitting the prosecutor's affidavit as evidence of appellant's trial counsel's competence at the hearing on appellant's motion for new trial and that appellant carried his burden of proving his entitlement to a new trial at the hearing. Therefore, I would hold that appellant satisfied the *Strickland* test [1] with respect to the trial as a whole and that the trial court abused its discretion in failing to order a new trial on the basis of appellant's coun-

---

1. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (establishing two-part test for ineffective assistance of counsel: (1) trial counsel's representation fell below objective standard of reasonableness, based on prevailing professional norms; and (2) result of proceeding would have been different but for counsel's deficient performance).

sel's ineffectiveness. I would reverse and remand for a new trial.

## Ineffective Assistance

### Lesser Included Offense of Manslaughter

Because appellant's trial counsel's requested instructions addressed only murder, defense of a third party, and self-defense, the jury could only have (1) convicted appellant of murder, (2) found that he acted in defense of himself or of a third party and acquitted him, or (3) found him not guilty and acquitted him. The jury could not have found him guilty of the lesser included offense of manslaughter or any other lesser included offense and assessed punishment commensurate with that offense. This strategy, as the majority points out, is known as an all-or-nothing strategy. See Lynn v. State, 860 S.W.2d 599, 603 (Tex.App.-Corpus Christi 1993, pet. ref'd). The majority, citing to Ex Parte White, 160 S.W.3d 46, 55 (Tex.Crim. App.2004), holds that "[d]efense counsel does not act deficiently in failing to request a lesser included offense if he was pursuing an all-or-nothing trial strategy." I disagree that Ex Parte White can be read so strongly.

I read Ex Parte White as holding that defense counsel does not act deficiently in failing to request a lesser included offense only if it is *reasonable* for him to pursue an all-or-nothing trial strategy under the circumstances of the case. See Ex Parte White, 160 S.W.3d at 55–56 (strategy was reasonable when trial counsel asserted that he discussed instructions on lesser-included offenses with defendant and deferred to defendant's decision not to request them); see also Lynn, 860 S.W.2d at 603 (all-or-nothing strategy, although risky, was not so unreasonable under facts of case as to deprive defendant of fair trial when focus of case was on absence of any

evidence of intent). Requiring a jury to opt between murder and acquittal, although risky, is sometimes successful. Lynn, 860 S.W.2d at 603. Moreover, Texas law presumes that counsel's actions and decisions are reasonably professional and motivated by sound trial strategy. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.App.1994). I challenge that presumption, however, by asking whether it was, in fact, reasonable for appellant's counsel not to request an instruction on the lesser included offense of manslaughter under the circumstances of this case.

I agree with the majority that, at the hearing on appellant's motion for new trial, the trial court could have disbelieved appellant's counsel's affidavit that he was not employing a reasoned strategy in failing to request an instruction on the lesser included offense of murder. Discounting the affidavit, the majority reasons that appellant's counsel could conceivably have had an all-or-nothing strategy and that such a strategy was reasonable under the circumstances of this case. I disagree. Even if appellant's counsel actually had an all-or-nothing strategy, as the majority concludes, there is additional evidence in the record that such a strategy was unreasonable.

A person commits murder if he "intentionally or knowingly" causes the death of an individual; an offense is a first degree felony punishable by five to 99 years in prison. Tex. Pen.Code Ann. § 19.02, 12.32. A person commits manslaughter if he recklessly causes the death of an individual; an offense is a felony of the second degree, hence punishable by two to 20 years in prison. Tex. Pen.Code Ann. §§ 19.02, 12.33. Self-defense and defense of a third person are complete defenses that, if found, justify the use of deadly force require acquittal. Tex. Pen.Code Ann. §§ 2.03, 9.31, 9.32, 9.33.

The jury was instructed that it could consider a punishment range of five to 99 years or life for the charge of murder or that it could acquit if it found that appellant used justifiable force in self-defense or in defense of a third person. Depending on the answers to these questions, appellant faced either acquittal or punishment ranging from 5 years to life in prison. If an instruction on manslaughter had been sought and the jury had convicted him of that offense, appellant would have faced a penalty of 2 to 20 years in prison. A charge of manslaughter thus would have offered the jury the opportunity to find that, although the deadly force he used was not justified, appellant did not knowingly and intentionally kill the complainant; thus, the jury could have found a lower level of culpability than murder and assessed a lower range of punishment commensurate with such culpability. There were sufficient facts to support such a finding.

The trial testimony establishes that appellant and the complainant, Michael Gaddis, were part of a group who had begun arguing in a club. As the club was closing and people were exiting the club into the parking lot, the group continued their argument, by shouting, pushing, and shoving, and a fight began. A full beer bottle was thrown at appellant and hit him in the leg. There was testimony from several witnesses that three people standing next to appellant's friend, Darrell Willis, including the complainant, Gaddis, jumped Willis and began beating him. Willis had had a stroke, was unable to speak articulately, and was weak on one side. Appellant testified that he shot into the group around Willis to stop the fight and to protect Willis, and Willis testified that he needed protection. There was testimony from Willis and appellant that appellant had taken the gun away from Willis shortly before this occurred.

There was also testimony that Gaddis's friends got him away from the fight and into a truck, but he continued arguing, got back out, and rushed towards appellant; that Gaddis and appellant exchanged more words; and that appellant shot him. There was also conflicting testimony from one witness that appellant got the gun from his truck and came back shooting at the crowd as Gaddis's friends tried to get him to let the argument go and leave.

Several shots were fired, and Gaddis was shot twice at close range, once at the side of the face and once in the abdomen. An officer who had been called to the scene testified that appellant told him Willis was unable to take care of himself because he had had a stroke and had less strength than the others in the crowd, that appellant was trying to protect him, and that he had taken Willis's gun from him earlier "because he didn't want Mr. Willis to do anything stupid is what he told me."

Unlike the defendant in *Ex parte White*, who rejected a lesser included offense instruction, appellant testified by affidavit at the motion for new trial hearing, "I told Mr. Richardson [appellant's trial counsel] from the very beginning that when I fired in the direction of the individuals whom I believed were assaulting Darrell Willis, I did not intend to kill anyone but to merely scare them and to get them to scatter." He further stated that he thought his counsel "was going to ask me what my intent was when I testified at trial but I now know that he did not" and that if he had known that his testimony entitled him to jury charges on the issues of aggravated assault or manslaughter, he would have asked his counsel "to make sure that the jury had these options instead of just murder or not guilty." Nor was the focus of the trial on the complete absence of intent, as in *Lynn*, but on appellant's act of shoot-

ing in the direction of a group of men who were hitting his friend.

There was evidence from which the jury could have decided (1) that appellant did not intend to kill Gaddis, but fired recklessly into the quarreling group in the parking lot to scare him or the persons in the group around Willis and stop the fight, in which case it could have convicted him of manslaughter; or (2) that appellant fired intending to kill Gaddis to protect himself or Willis, in which case the jury could have acquitted him; or (3) that appellant intentionally and knowingly killed Gaddis, in which case the jury could have convicted him of murder, as it did. Appellant's counsel's failure to request an instruction on manslaughter deprived appellant of the opportunity to be convicted on a lesser charge that comported with the testimony of several witnesses, that was otherwise supported by the record, and that would have established a lesser degree of culpability and imported a lesser range of punishment than murder. Instead, under the charge given, the jury could only convict appellant of murder or acquit him. Thus, I would conclude that appellant's counsel's failure to request an instruction on the lesser included offense of manslaughter was unreasonable under the circumstances of this case.

The majority finds the all-or-nothing strategy it attributes to defense counsel to be reasonable because "the facts were more consistent with an intentional killing in defense of self · and others." But the question is not whether this Court thinks that the facts were more consistent with an intentional killing than with a reckless killing, but whether the jury would. Appellant's counsel's acts and omissions denied his client the opportunity to have a jury determine whether the evidence better supported a manslaughter conviction than a murder conviction when either

could have been supported by the facts and a manslaughter conviction would necessarily have resulted in a much lighter sentence than the 60–year prison sentence appellant received.

The only rational basis the majority can construct for appellant's counsel's *not* giving a manslaughter instruction is that it would have been inconsistent with the all-or-nothing strategy the Court attributes to defense counsel, both prongs of which required a finding of intentional killing. That, to my mind, is no reason not to request a manslaughter instruction, because the purpose of that instruction is to let the jury know that it can find a *lesser* mens rea than intentional killing and can decide on a *lesser* punishment. A strategy that abandons a lesser-included-offense theory and offers the jury a choice between murder and self-defense does not become reasonable because a reviewing court thinks the facts fit better with self-defense than with manslaughter or that manslaughter has a different men rea. The whole point of instructing the jury on manslaughter is to allow *it* to determine what it—not this Court—believes the defendant's state of mind to have been on the basis of the facts presented in evidence. That is the factual determination the jury should have been allowed to make here and was not, and it was a determination critical to the result of the trial.

### Failure to Elicit Testimony

The majority opinion is not made stronger by its rejection of appellant's argument that his trial counsel provided ineffective assistance by not eliciting testimony regarding appellant's lack of intent to kill. The majority acknowledges appellant's assertion in his affidavit that his trial counsel knew before trial that he did not intend to kill anyone when he fired his gun, but it excuses trial counsel's failure to elicit this testimony at trial because it

would have been inconsistent with a self-defense theory. This is a boot-strap argument. If it was not reasonable for defense counsel to put all of appellant's eggs in one defensive basket, that strategy is not made *more* rational by lopping off facts that benefit appellant by supporting a theory of manslaughter on which he might have had better luck in order to maintain the consistency of a presumed all-or-nothing strategy.

The fact that defense counsel refused to elicit testimony regarding a fact critical to appellant's manslaughter defense—his lack of knowing intent to kill—does not support the view that appellant's representation was professionally reasonable and strategically sound. It supports the conclusion that appellant's counsel's strategy was unreasonable because he presented what can best be described as an extremely risky all-or-nothing case on behalf of his client, even though he knew critical facts that would offer his client a less risky alternative. Moreover, appellant's counsel himself had testified that he had no strategy at all. Even the risky strategy attributed to him is this Court's own construct.

### *Punishment*

Finally, while I agree with the majority that appellant's trial counsel's performance was deficient at the punishment phase for the reasons the majority states, I find it impossible to say that a properly instructed jury would have convicted appellant of murder in the first place, much less sentenced him to 60 years in prison. And I can find no basis for determining that appellant's lengthy punishment was due merely to his counsel's ineffectiveness at the punishment stage rather than to his combined ineffectiveness at both the trial and punishment stages.

I believe appellant satisfied both prongs of the *Strickland* test—he proved by a preponderance of the evidence that his

counsel's representation fell below professional standards and that the result of the trial would have been different had he received reasonably effective assistance. *See Strickland,* 466 U.S. at 688–92, 104 S.Ct. at 2064–67; *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *Jackson v. State,* 973 S.W.2d 954, 956 (Tex. Crim.App.1998). Therefore, I would sustain appellant's first and second points of error and would remand this case for a new trial as to both guilt and punishment.

### Admission of Evidence at Motion for New Trial Hearing

I also disagree with the majority's opinion that the prosecutor's affidavit was properly admitted as evidence in opposition to appellant's motion for new trial. Nor do I agree that appellant failed to preserve his objections to that affidavit under Rules 701 and 702. I would hold that appellant preserved his objections to the affidavit under Rules 401, 402, 602, 701 and 702 and that the affidavit was inadmissible under all of those rules. Without the prosecutor's affidavit there was no evidence to support the trial court's denial of a new trial. I would hold that the trial court erred in admitting the affidavit, that appellant carried his burden of proving his entitlement to a new trial by a preponderance of the evidence, and that the trial court erred in denying appellant a new trial.

In her affidavit, the prosecutor opined, "I do not agree with the assertions of the defense lawyer in this case contained in the defense affidavit and I believe that he is not being candid with the court in his admissions to 'alleged' ineffective assistance." She further opined,

"I believe that it was sound trial strategy on his part not to request the lesser offenses. Lee Richardson [appellant's trial counsel] did request and receive

charges of self-defense and defense of third party. It would have been viewed as contradictory to have asked the jury to find him not guilty and then state that if they find him guilty, they should find him guilty of the lesser offense only. After all, self-defense applies to all defensive theories so that would have been the better request (to the exclusion of the lesser)."

The prosecutor then asserted that appellant's counsel "did stand up and object to the specific unintentional mistake that I made"—namely, that a third party has a duty to retreat. "However, the charge correctly explained the law to the jury." She excused defense counsel for not making a more specific objection in response to her own "mistake," opining that error was committed by the trial judge in precluding a more specific objection, but concluding, "since the correct wording was in the charge, no harm was done to either party." She then opined that it was "sound trial strategy to not have further objected because Lee Richardson did not want to draw attention to the issue in front of the jurors and the charge was correct on the issue."

Finally, the prosecutor offered her opinion that this "was a particularly bad case in that several people could have been hurt in addition to the death of the victim," and she speculated that, had appellant's witnesses been called at the punishment phase, "I would have impeached their testimony with his terrible criminal and probation record."[2] She summed up:

It is my opinion that this additional testimony on punishment would have been extremely detrimental to the defense and that is why Lee Richardson may not have called these witnesses. For instance, they all would have either testified that they did not know all these outrageous facts or if they knew about these facts, they were unable to assist him in altering his criminal ways. Either way, this testimony would have reflected poorly upon the defendant. Such evidence is rarely given much credibility by a jury and, in my experience, is often used against defendants. Lee Richardson knew of this information based on his research into the case and I believe that it was sound trial strategy for him to decide to not call these witnesses.

As the majority states, appellant asserted the following objection to the affidavit:

[U]nder Rules 401 and 402, certainly Ms. Hartman's affidavit is irrelevant in the sense that it makes no fact more or less likely as a consequence to this proceeding. She has no personal knowledge of any of the operative facts that impact the consideration of the issues before the Court today to the extent that she asserts that trial counsel is, quote, not candid, close quote, about his assertion.

The Court is well aware that in *Schutz v. State*, and 50 other cases, it is improper for one witness to give his or her opinion to the truthfulness of another

---

**2.** Appellant's criminal record was stipulated to at the punishment phase. It included no felonies, nor were any enhancement paragraphs included in the court's charge on the assessment of punishment. Rather, the charge instructed the jurors that appellant had filed a sworn motion for community supervision alleging that he had never been convicted of a felony in Texas or any other State. The prosecutor attached no evidence to her affidavit in opposition to a new trial to substantiate her claims that appellant had a "terrible criminal and probation record" with which she could have impeached appellant's witnesses or her claims that these witnesses "all would have either testified that they did not know all these outrageous facts or if they knew about these facts, they were unable to assist him in altering his criminal ways."

witness' testimony. It is clearly speculative.

Her testimony as to Mr. Richardson's purported trial strategy is, again, without foundation. Certainly it makes no fact at issue more or less likely and doesn't even provide a nudge in that direction, which is the standard review for relevancy. I would object to it under those bases, Your Honor.

The trial court overruled appellant's objections.

The majority holds that appellant preserved his objections under rules 401, 402, and 602, but not under rules 701 and 702. "The purpose of an objection is two-fold: (1) to notify the trial judge and the State of the complaint . . .; and (2) to preserve a complaint for appellate review." *Ex parte Little,* 887 S.W.2d 62, 65 (Tex.Crim.App. 1994) (citations omitted). An objection may be phrased in any manner that sufficiently apprises the judge and opposing counsel of the nature of the complaint; no particular form is required. *Id.* I would hold that appellant's objection was sufficient to apprise the judge of his complaints under Rules 701 and 702, as well as under rules 401, 402, and 602.

Rules 401 and 402 permit the admission of evidence only if it is relevant, i.e., if it tends to make the existence of a fact consequential to the determination of the action more or less probable than it would be without the evidence. TEX.R. EVID. 401, 402. Rule 602 prohibits a witness from testifying about a matter of which the witness has no personal knowledge.[3] Rule 701 prohibits opinion testimony by a lay witness unless it is rationally based on the

witness's own perception or helpful to understanding the witness's own testimony or to determining a fact in issue. TEX.R. EVID. 701. Rule 702 permits testimony by expert witnesses, but only if they are qualified "by knowledge, skill, experience, training, or education" to testify in the form of an opinion or otherwise. TEX.R. EVID. 702. *Schutz v. State,* 957 S.W.2d 52, 59 (Tex.Crim.App.1997), and its progeny, cited by appellant's counsel in his objection to the admission of the prosecutor's affidavit, are the leading cases on the improper admission of expert testimony under rules 602, 701, and 702. Therefore, I would conclude that appellant's objection was sufficient to notify the trial judge and the State of his complaints under Rules 401, 602, 701, and 702 and to preserve those complaints for appellate review.

I agree with appellant that the prosecutor's affidavit should have been excluded from evidence under all of the foregoing rules. Virtually all of the prosecutor's affidavit testimony consisted of her speculation and lay and expert opinion as to her opponent's knowledge, strategy, and credibility, the behavior of juries, and the prosecution of the trial under different factual circumstances, and her legal opinion as to the trial court's rulings, the court's charge, and the ultimate *legal* question of her opponent's effectiveness. As the Court of Criminal Appeals stated in *Charles,* "Statements in affidavits of interested witnesses concerning their *own* state of mind are 'uncontrovertible' because 'the mental workings of an individual's mind are matters about which adversaries have no knowledge or ready means of confirming

---

**3.** Rule 602 provides,

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

TEX.R. EVID. 602.

or controverting." 146 S.W.3d at 210 (emphasis added). How much less controvertible, therefore, is a self-interested prosecutor's testimony about the workings of her *opponent's* mind—matters as to which *a fortiori* he or she can "have no knowledge or ready means of confirming or controverting"? *See Charles,* 146 S.W.3d at 210.[4] Rule 602 expressly prohibits a fact witness from testifying about a matter of which he has no personal knowledge. Thus, I would conclude that the prosecutor's affidavit was inadmissible under Rule 602.

Likewise, Rule 701 prohibits opinion testimony by a lay witness that is not rationally based on the witness's *own* perception or helpful to understand the witness's *own* testimony or to determine a *fact* in issue. Tex.R. Civ. P. 701. The prosecutor's affidavit purports to testify to matters necessarily outside her own perception and purportedly helpful only to understand her opponent's testimony and to determine legal issues left to the determination of the court. Thus, I would conclude that the trial court erred in admitting the prosecutor's affidavit over appellant's objection under Rule 701.

In addition, the prosecutor's affidavit is replete with speculative references, not only as to the workings of defense counsel's mind and strategy, but also as to what *would* have happened had her opponent represented his client differently, *e.g.,* had he conducted the investigation of 20 witnesses that he attested he did not conduct and had he called those witnesses to testify in mitigation of appellant's punishment: "For instance, they all would have either testified that they did not know all these outrageous facts or if they knew about these facts, they were unable to assist him in altering his criminal ways."

The prosecutor could not have had any factual basis for these assertions. I would, therefore, conclude that her affidavit is inadmissible under Rule 602 in this regard as well. Moreover, because such speculation has no tendency to make any relevant fact more or less probative, it is inadmissible under Rule 401. *See Mayes v. State,* 816 S.W.2d 79, 84 (Tex.Crim.App.1991) (evidence is relevant under Rule 401 if it "influences consequential facts, *i.e.,* facts which have something to do with the ultimate determination of guilt or innocence in a particular case").

Nor was the prosecutor's affidavit admissible as expert testimony under Rule 702. The threshold determination in admitting expert testimony is whether that testimony will help the trier of *fact* understand the evidence or determine a fact in issue. *Schutz,* 957 S.W.2d at 59; *Kelly v. State,* 824 S.W.2d 568, 572 (Tex.Crim.App. 1992); *Perkins v. State,* 902 S.W.2d 88, 93 (Tex.App.-El Paso 1995, pet. ref'd). The use of such testimony must be limited to those situations when the expert's knowledge and experience are superior to those of the average juror. *Yount v. State,* 872 S.W.2d 706, 710 (Tex.Crim.App.1993); *Perkins,* 902 S.W.2d at 93.

In *Yount,* the Court of Criminal Appeals, analyzing the admissibility of expert testimony on child behavior under Rule 702 in an aggravated sexual assault case, stated that "the threshold determination for admitting expert testimony is whether such testimony 'if believed, will assist the untrained layman trier of fact to understand the evidence or determine a fact in issue.'" 872 S.W.2d at 708 (quoting *Duckett v. State,* 797 S.W.2d 906, 908 (Tex.Crim. App.1990)). The court "cautioned that expert testimony which assists the jury in

---

**4.** This is particularly true when, as here, both the trial court and this Court have refused to give any credence to appellant's counsel's own affidavit.

determining an ultimate fact is admissible, but expert testimony which *decides* an ultimate fact for the jury, such as 'a direct opinion on the truthfulness of the child,' crosses the line and is not admissible under Rule 702." *Id.* (citing *Duckett,* 797 S.W.2d at 914, 918–19).

"[E]xpert testimony must aid—not supplant—the jury's decision." *Schutz,* 957 S.W.2d at 59; *Perkins,* 902 S.W.2d at 93. Thus, "direct testimony as to a witnesses' credibility is inadmissible under Rule 702 because it does not concern a subject upon which the testimony of an expert would *assist* the trier of fact." *Yount,* 872 S.W.2d at 709 (emphasis in original); *Perkins,* 902 S.W.2d at 93. Such evidence does more than assist the trier of fact to understand the evidence or determine a fact in issue; it impermissibly decides an issue for the trier of fact. *Yount,* 872 S.W.2d at 709; *see also Schutz,* 957 S.W.2d at 59; *Perkins,* 902 S.W.2d at 93. Nor is a witness's opinion admissible to interpret the meaning of the acts, conduct, or language of another. *See Rodriguez v. State,* 903 S.W.2d 405, 410 (Tex.App.-Texarkana 1995, pet. ref'd).

The prosecutor's affidavit testimony was not designed to assist an untrained layman to understand the evidence or to determine facts in issue. Nor did it help the visiting trial judge understand the evidence or determine any *fact* as to appellant's counsel's effectiveness. Rather, the expert opinion testimony offered went entirely to the *legal* conclusions to be drawn by the court as guided by the prosecutor— a witness who had an interest in the outcome of the hearing, who was not qualified at trial or in her affidavit as an expert witness on the law, who had no personal knowledge of defense counsel's mental workings or strategy or the possible testimony of witnesses who were not interviewed or called, and who was in no better position than the trial judge—even the visiting trial judge who conducted the motion for new trial hearing—to assess whether or not defense counsel's representation of his client met professional standards of representation.

Not only did the prosecutor's affidavit not assist the trier of fact, it directly supplanted both the role of the trier of fact in assessing the ultimate fact issue of defense counsel's strategy and the role of the judge himself in determining the ultimate legal issue of the effectiveness of appellant's representation, based on the prosecutor's asserted legal expertise. It was, in fact, nothing more than the legal opinion of counsel presented as evidence. Trial courts may not consider the legal conclusions of witnesses on ultimate questions of law as competent evidence; such questions are matters to be decided by the courts themselves on the basis of the facts presented in the evidence. *See Fort Worth Neuropsychiatric Hosp., Inc. v. Bee Jay Corp.,* 600 S.W.2d 763, 765 n. 4 (Tex.1980).

I would hold that the prosecutor's affidavit was inadmissible under Rule 702 as well as under Rules 602, 401, and 701.[5]

---

5. A panel of this Court has recently held a trial prosecutor's affidavit admissible to refute a criminal defense counsel's affidavit as to his own ineffective assistance. *Biagas v. State,* 177 S.W.3d 161 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd). The appellant had argued that the affidavit was inadmissible under Texas Disciplinary Rule of Professional Conduct 3.08(a), which prohibits a lawyer from continuing employment in an adjudicatory proceeding if the lawyer knows or believes he may be a witness necessary to establish an essential fact on behalf of his client. *Id.* at 172. The panel observed that "the prosecutor's affidavit here was offered for the purpose of demonstrating that Biagas's trial counsel was neither deficient nor prejudicial, and did not relate to an issue in the trial." *Id.* at 173. It reasoned, "The trial judge has firsthand knowledge of the matter in issue,

Indeed, I think the majority sets a dangerous precedent by allowing a conflicted prosecutor in a criminal proceeding with a personal interest in sustaining a conviction she has obtained on behalf of her client, the State, to turn around and appear both as a fact witness and as an expert witness against the defendant in sustaining that conviction. I think this practice implicates fundamental due process concerns, and I would not lend the gloss of legality to it.

Because appellant presented evidence at the motion for new trial hearing from which the trial court could reasonably have concluded (1) that his counsel's representation at trial fell below an objective standard of reasonableness and (2) that the result of the proceeding would have been different but for his counsel's deficient performance, and because the State presented no admissible countervailing evidence at that hearing, I would hold that appellant established his right to a new trial by a preponderance of the evidence at that hearing. Accordingly, the trial judge's denial of a new trial was not "supported by any reasonable view of the record evidence" and was an abuse of discretion. *See Charles*, 146 S.W.3d at 210.

I would sustain appellant's third point of error.

### Conclusion

I would conclude that appellant's defense counsel provided ineffective assistance of counsel during both the guilt-innocence and punishment phases of appel-lant's trial and that the trial judge abused his discretion in denying appellant's motion for new trial. I would, therefore, reverse the judgment of the trial court and remand the cause for a new trial.

and thus, is less dependent on the adversary process to test the credibility of the testimony." *Id.* Thus, it reasoned that the affidavit was admissible under an exception to Rule 3.08, which permits a lawyer to testify if "the testimony relates to the nature and value of legal services rendered in the case." *Id.* (quoting Tex. Disciplinary R. Prof'l Conduct 3.08(a)(3), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. Art. X, § 9)). The panel also held that, because the affidavit recited some relevant facts, and because "Biagas did not expressly direct the trial court to the particular statement within the affidavit that he asserts was irrelevant on Rule 401 or Rule 403 grounds," the affidavit was not inadmissible under those rules. *Id.* at 173–74. Here, the objections and the facts are different, and the rationale of *Biagas* does not apply.