**Opinion issued July 22, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00245-CR

———————————

**JUAN FRANCISCO HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 1**
**Brazoria County, Texas**
**Trial Court Case No. 191712**

---

## MEMORANDUM OPINION

Juan Hernandez was convicted of possession of less than two ounces of marijuana, a Class B misdemeanor.[1] After the jury found Hernandez guilty, the trial court assessed punishment at 180 days' confinement—which the court

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.121 (West 2010).

probated for a 12-month period—and a fine of $800. Hernandez filed a motion for new trial, asserting that his trial counsel provided ineffective assistance of counsel. The trial court denied the motion.

Hernandez appeals the denial of his motion, arguing that his counsel was deficient because he (1) failed to adequately investigate and prepare for trial, (2) failed to timely file pre-trial motions, (3) erroneously permitted off-record proceedings to occur in judge's chambers outside Hernandez's presence, (4) affirmatively elicited harmful hearsay testimony from a police witness, and (5) failed to challenge the admissibility of Hernandez's statements made to police officers during the search of his vehicle.

We affirm.

## Background

Hernandez was stopped by Pearland Police Officer J. Guerrero for an expired vehicle registration. Hernandez was the only person in the vehicle at the time, but he was not the registered owner. Officer Guerrero found marijuana in the vehicle and arrested Hernandez.

At his trial, an issue came up during voir dire whether the jury or trial court would assess punishment if the jury found Hernandez guilty of marijuana possession. Hernandez's counsel noted that he was requesting the jury to assess punishment; however, the trial court announced that it would assess punishment

2

instead, based on Hernandez's inadequate election. Hernandez did not testify during the guilt-innocence phase of the trial, but the two officers involved in his arrest did.

Office Guerrero testified that, as he approached Hernandez's vehicle, he noticed a strong smell of marijuana. Based on the smell, he asked Hernandez to step out of the vehicle and wait on the side of the road while he did a probable cause search of the vehicle. Officer Guerrero requested assistance, and Officer E. Morton, who was in the area, stood with Hernandez next to the vehicle while Officer Guerrero searched it. Officer Morton testified that he also noticed a strong smell of marijuana coming from the vehicle. During the search, Officer Guerrero found a duffle bag in the back seat of the vehicle that contained a glass jar with marijuana inside. Officer E. Morton testified about two statements Hernandez made to him while the vehicle was being searched, confirming that (1) Hernandez could smell the marijuana and (2) there was "maybe" and "probably" marijuana in the vehicle. The jury found Hernandez guilty of possession of marijuana.

Hernandez testified in the punishment phase of the trial. He stated that there were "no convictions on my record whatsoever" but listed as his criminal history a deferred probation for assault, a juvenile adjudication for graffiti, and an earlier arrest for possession of marijuana. Despite his earlier arrest for marijuana

possession and the two officers' testimony that the vehicle smelled like marijuana, Hernandez testified that he had never smoked marijuana before.

The trial court sentenced Hernandez to one year of community supervision (probating a 180-day jail term), assessed an $800 fine, and suspended his driver's license for 180 days.

Hernandez filed a motion for new trial alleging ineffective assistance of trial counsel. Both Hernandez and his trial counsel testified at the hearing. During his testimony Hernandez disclosed that he had two additional arrests for possession of marijuana—one of which occurred between the arrest and trial in this matter. The motion for new trial was denied, though the trial court entered an order staying commencement of the terms of community supervision pending appeal.

Hernandez timely appealed.

## Ineffective Assistance of Counsel Claims

In one issue, Hernandez contends that his trial counsel provided him ineffective assistance of counsel in all aspects of his trial. We have consolidated his allegations into five assertions of counsel deficiency: (1) failure to adequately investigate and prepare for trial, (2) failure to timely file pre-trial motions, (3) erroneously permitting off-record proceedings to occur in judge's chambers outside Hernandez's presence, (4) affirmatively eliciting harmful hearsay

4

testimony from a police witness, and (5) failing to challenge the admissibility of Hernandez's statements made during the vehicle's search.

We turn first to the proper standard of review given that the trial court has already rejected Hernandez's claim of ineffective assistance of counsel by denying his motion for new trial.

## A.      Standard of review

In *Strickland v. Washington*, the United States Supreme Court recognized that a criminal defendant has a Sixth Amendment right to effective assistance of counsel, observing the "crucial role" the right to counsel plays in our adversarial system. 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984); *see Ex parte Jimenez*, 364 S.W.3d 866, 882–83 (Tex. Crim. App. 2012). A criminal defendant claiming that trial counsel was ineffective must prove that (1) trial counsel's performance fell below an "objective standard of reasonableness" and (2) the deficient performance prejudiced his defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *Jimenez*, 364 S.W.3d at 883.

To determine whether Hernandez has shown counsel's performance was objectively deficient under the first prong of *Strickland*, we look to the totality of the representation and the particular circumstances of the case at the time of trial,

5

ignoring the effect of "20/20 hindsight." *Jimenez*, 364 S.W.3d at 883; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We indulge a strong presumption that counsel rendered adequate assistance and acted in furtherance of a sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Jimenez*, 364 S.W.3d at 883; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004). To overcome the presumption of reasonable professional assistance, an allegation of ineffectiveness must be firmly rooted in the record. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). There are "countless ways" to provide effective assistance; therefore, an appellate court's scrutiny of trial counsel's conduct should be highly deferential and presumed to be in furtherance of sound trial strategy unless the record demonstrates otherwise by a preponderance of the evidence. *Ex parte Rogers*, 369 S.W.3d 858, 862 (Tex. Crim. App. 2012) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

Under the second prong of *Strickland*, an appellant must show that there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). What is required to meet the "reasonable probability" standard is a lesser burden than the more-likely-than-not standard. *Shanklin v. State*, 190 S.W.3d 154, 165 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd improvidently granted).

6

A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

"The two prongs of *Strickland* need not be analyzed in a particular order" on appeal. *Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex. Crim. App. 2011). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). Therefore, if we determine that Hernandez cannot establish prejudice as a result of his counsel's alleged deficiency, we need not consider whether trial counsel's actions were ineffective. *Id.*

When, as here, an appellant first raises the issue of ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Rodriguez v. State*, 329 S.W.3d 74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Cf. Broussard v. State*, 68 S.W.3d 197, 206 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (noting that, without new trial motion to create record of trial counsel's reasons for actions, appellate court must presume actions were product of overall strategic design and reasonable). An abuse of discretion occurs when the trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). We view the evidence in the light most favorable to the trial court's ruling,

7

and will reverse only if no reasonable view of the record could support the trial court's finding. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We defer to the trial court's resolution of historical facts and, so long as a reasonable view of the evidence supports the trial court's decision to deny Hernandez's motion for new trial, we will affirm. *Acosta v. State*, 411 S.W.3d 76, 90 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

**B.     Failure to adequately investigate and prepare for trial**

Hernandez contends that his trial counsel "fail[ed] to conduct an independent investigation into the facts and circumstances of the charge alleged" and "fail[ed] to conduct any sort of meaningful preparation of a punishment case." Hernandez specifically complains that his counsel failed to make an "independent investigation into what other person or persons may have been responsible for the marijuana that was found in the truck that day." He argues that the truck he was driving actually belonged to his brother, David, and that David and others at his place of employment had access to the truck before the arrest. Presumably, then, one of them could have exonerated Hernandez by testifying that the marijuana was actually his.

A criminal defense lawyer must have a firm command of the facts of the case to render reasonably effective assistance of counsel. *Ex parte Ybarra,* 629 S.W.2d 943, 946 (Tex. Crim. App. 1982); *Ex parte Duffy,* 607 S.W.2d 507, 516

(Tex. Crim. App. 1980). Counsel has the responsibility to seek out and interview potential witnesses. *Ex parte Duffy,* 607 S.W.2d at 517. We cannot view defense counsel's conduct as consistent with a sound trial strategy if counsel's failure to conduct an investigation left him unable to make an informed strategic decision. *Id.* at 526; *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *see also Shanklin*, 190 S.W.3d at 164–65 (stating there can be no "strategy" to not call witness if counsel had no knowledge concerning testimony witness would have offered).

Hernandez's counsel testified at the hearing on the motion for new trial. He offered that, "in hindsight," he should have presented the case differently; however, an ineffective-assistance-of-counsel claim must be analyzed from the perspective of counsel at the time he acted and without the "deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813. Regarding his thoughts at the time he made trial strategy decisions, he testified that he had reviewed the case and taken notes on the offense report, interviewed Hernandez, and in his opinion developed a strategy. He stated that he "didn't just walk into this courtroom and read the offense report and read the allegation." When questioned about his trial strategy on the specific issue of Hernandez's brother being the owner of the vehicle containing the marijuana, Hernandez's counsel responded that he thought calling the brother as a witness would have been "futile." He explained:

9

Q. And what was your reasonable trial strategy in failing to contact David, the owner of the vehicle, in a circumstantial evidence case like this?

A. Well, I felt that David—very unlikely he's going to admit that yes, the marijuana is his and would seem to me to be futile.

To prevail on a *Strickland* challenge based on counsel's failure to identify or call a defense witness, the aggrieved client must establish harm by showing that the witness was available to testify and that the testimony would have been of some benefit to the defense. *See Ex parte White*, 160 S.W.3d at 52. Hernandez fails to establish any harm. He did not offer an affidavit from his brother, David, or any other person who had access to the truck, indicating that he would have testified that the marijuana actually belonged to him. Without knowledge of what the witness would have testified to at trial, we cannot conclude that Hernandez was harmed by his counsel's failure to call any of these potential witnesses. Given the deference afforded a trial court's ruling on a motion for new trial, we also cannot conclude that the trial court erred by denying the motion based on this allegation of ineffective assistance of counsel. *See Acosta*, 411 S.W.3d at 90.

Regarding counsel's preparation for the punishment phase of trial, Hernandez complains that he would have provided lengthier testimony had his counsel told him the types of information that would have been relevant to that phase of the trial. Again, we conclude that Hernandez cannot meet his burden to establish harm, even if we were to presume his counsel was deficient. Hernandez

10

had already been found guilty by the jury; the trial court judge was deciding punishment. Ultimately, the court sentenced Hernandez to one year of community supervision—half the length that could have been assigned. And his fine of $800 was less than half the maximum fine for a Class B misdemeanor. TEX. PENAL CODE ANN. § 12.22 (West 2011).

Hernandez offered that he would have testified that he went to church, donated his time and money, and cared for family members had his counsel better prepared for trial and informed him of the types of information relevant to a punishment determination. He asserts that "there is good reason to believe that similar testimony during the punishment phase would have impacted Judge Mills in a manner beneficial to appellant."

We cannot conclude that this additional testimony would have lessened his punishment, particularly considering that the trial judge who sentenced him was the same judge who considered and denied his motion for new trial on the exact issue of un-elicited mitigating testimony. *See Shanklin*, 190 S.W.3d at 166 ("In considering a motion for new trial, the trial court possesses broad discretion in determining the credibility of the witnesses and in weighing the evidence to determine whether a different result would occur upon retrial."); *see also Mazratian v. State*, 961 S.W.2d 353, 358 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (defendant failed to meet second prong of *Strickland* by showing prejudice:

11

"[H]e received a probated sentence . . . . Appellant has not shown that there is a reasonable probability that, but for trial counsel's [error], the result of the trial would have been different.").

The trial court's decision that this testimony did not warrant a new trial is not so clearly wrong as to lie outside the zone of reasonable disagreement; therefore, the trial court did not abuse its discretion in denying the motion for new trial on this basis.

## C.    Failure to timely file pre-trial motions

Hernandez asserts that his counsel was deficient by "fail[ing] to timely file motions to protect appellant's rights during trial." Specifically, he complains that he told his attorney he wanted the jury to assess punishment, yet his attorney failed to timely or adequately file his election. Hernandez wanted the jury to assess punishment "because he felt they would be more lenient with him if he was convicted."

Hernandez must meet his burden under both *Strickland* prongs to prevail on an ineffective assistance of counsel claim; failure to meet either prong prohibits a finding of ineffective assistance. *Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068. If Hernandez fails to meet his burden to demonstrate harm, we may overrule the issue without analyzing whether counsel's conduct was deficient. *Cox*, 389 S.W.3d at 819; *Ladd v. State*, 3 S.W.3d 547, 570 (Tex. Crim. App. 1999).

Hernandez did not demonstrate harm. The motion that he claims was untimely filed was a request to have the jury determine punishment. Instead, the trial court assessed punishment by probating Hernandez's sentence. This is the same result he sought in his untimely motion: to "be granted community supervision . . . ." Hernandez appears to concede a lack of prejudice, stating in his appellate brief that counsel's failure to timely file his motion "is not per se ineffective" but could be considered part of "cumulative errors" requiring reversal.

Given that the trial court placed Hernandez on community supervision as requested and the lack of assurance that a jury would have recommended a more lenient sentence, we cannot conclude Hernandez was prejudiced by his counsel's failure to elect to have the jury determine punishment. Thus, the trial judge did not abuse its discretion in denying the motion for new trial on that basis.

## D. Acquiescing to off-record proceedings in judge's chambers

Hernandez also complains that his counsel "fail[ed] to object to proceedings during trial that took place in private, off the record, and outside of appellant's presence." Hernandez contends that challenges for cause were asserted during an off-record conversation leaving him unable to discern "whether there were any other additional challenges for cause that were made but not granted." The State responds that Hernandez had not met his burden on this issue. For instance, during the hearing on Hernandez's motion for new trial, his trial counsel would not

13

confirm that strikes for cause were asserted at the off-record conference. In fact, counsel testified that he would have asked for a record if anything of any relevance or importance occurred and would not have prejudiced his client by failing to do so.

We are required to view the evidence in the light most favorable to the trial court's ruling. *Webb*, 232 S.W.3d at 112. Hernandez's speculation that the content of the off-record discussion affected the composition of the jury panel is insufficient to require reversal of the trial court's decision to deny the motion for new trial. *Cf. Muennink v. State*, 933 S.W.2d 677, 682 (Tex. App.—San Antonio 1996, pet. ref'd) (overruling ineffective assistance argument based on trial counsel's failure to insist that court reporter make record of jury selection); *see Ex parte Howard*, No. AP–76809, 2013 WL 4859010, at *5 (Tex. Crim. App. Sept. 11, 2013) (mem. op., not designated for publication) (holding that appellant was unable to establish prejudice based on unrecorded bench conferences or counsel's failure to object to jury shuffle); *Anderson v. State*, No. 10-09-00306-CR, 2010 WL 4140317, at *4–5 (Tex. App.—Waco Oct. 20, 2010, pet. ref'd) (mem. op., not designated for publication) (overruling appellant's contention that unrecorded conferences required reversal and holding that "ineffective assistance claim will not be sustained on the basis of mere speculation" regarding what occurred in unrecorded conference).

**E.    Eliciting hearsay testimony from police witness**

Hernandez argues that his attorney committed professional error when he attempted to impeach the arresting officer. Based on counsel's testimony at the hearing on Hernandez's motion for new trial, counsel believed the arresting officer was testifying at trial about matters not included in his police report. Counsel asked Officer Morton whether he had any idea who put the bag containing the marijuana in the car and then, more specifically, whether he knew if another person, such as Hernandez's brother, put it in the car. These questions led Officer Morton to testify about a conversation he had with Hernandez's brother. Hernandez complains that the decision to raise this topic during cross-examination was error and inconsistent with any reasonable trial strategy because Hernandez's counsel was wrong—he misremembered the content of the police report and the attempt to impeach elicited harmful testimony.

While testifying at the hearing on the motion for new trial, Hernandez's counsel agreed that he made a "mistake" and that the testimony elicited was not helpful "[o]n the whole." Nonetheless, counsel did offer a reason for asking the questions: "That was the only way I could get in the fact that the truck did not belong to Mr. Hernandez and that his brother stated the truck belonged to him."

Litigants are not guaranteed an error-free representation by their counsel. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991); *Ingham v. State*, 679

15

S.W.2d 503, 509 (Tex. Crim. App. 1984) (en banc). Isolated mistakes generally do not require a finding of ineffective assistance of counsel. *Ingham*, 679 S.W.2d at 509. Even if this mistake did meet the first prong of *Strickland*, we conclude that Hernandez has not demonstrated harm from the testimony. *See Ladd,* 3 S.W.3d at 570 (holding that failure to establish prejudice prong of *Strickland* test precludes any relief).

Hernandez's analysis of this issue is limited to a single sentence: "His reckless introduction of an otherwise inadmissible hearsay statement in a manner which actually underscored that statement was objectively deficient, and Appellant was likely prejudiced by it." Officer Morton had testified that he called Hernandez's brother to confirm Hernandez's story. The brother told him that he had not seen Hernandez in two days. He confirmed that the vehicle was newly purchased. But the brother said nothing about who owned the marijuana. Hernandez fails to demonstrate how this testimony prejudiced him at trial.

Besides, this issue was presented to the trial court in the motion for new trial, which was denied. We cannot conclude that the trial court abused its discretion in holding that Hernandez failed to meet his burden to establish ineffective assistance of counsel based on this exchange during cross-examination of Officer Morton. To the extent this testimony can be viewed as harmful, it is within the zone of reasonable disagreement, which makes it insufficient to

16

conclude that the trial court abused its discretion by denying the motion for new trial.

**F.     Failure to challenge the admissibility of Hernandez's statements made during the vehicle search**

Hernandez's final complaint concerns his counsel's failure to object to Officer Morton's testimony recounting incriminating statements made by Hernandez during the vehicle search. Officer Morton testified as follows:

> Q.     Did you ask him about the marijuana smell in the truck?
>
> A.     Yes. I asked if he smelled marijuana in the truck; and he said, yes.
>
> Q.     Did you ask him if there was marijuana inside the truck?
>
> A.     Yes. I asked him if—if there was any marijuana inside the truck. He shrugged his shoulders, said maybe and said probably.

Hernandez asserts that his counsel should have objected to this testimony as inadmissible custodial statements made without the benefit of *Miranda*-style, statutory warnings. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). If Hernandez cannot establish a reasonable likelihood that a pre-trial motion to suppress or proper objection to admission of his statement would have been successful—and, as a result, would have altered the outcome of the proceeding—then counsel's failure to take those actions cannot support an ineffective assistance claim. *See Yuhl v. State*, 784

17

S.W.2d 714, 717 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd); *Martinez v. State*, No. 04-04-00057-CR, 2005 WL 2138121, at \*1–2 (Tex. App.—San Antonio Sept. 7, 2005, no pet.) (mem. op., not designated for publication). The record does not support Hernandez's assertion that he was in custody when these statements were made.

A person held for investigative detention is not "in custody." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). The point that a traffic stop escalates from an investigative (non-custodial) to a custodial detention is determined based on objective factors surrounding the event. *See State v. Ortiz*, 382 S.W.3d 367, 372–73 (Tex. Crim. App. 2012). These include whether there is probable cause to arrest and whether the defendant has become the focus of the investigation. *Dowthitt*, 931 S.W.2d at 254–55. "[T]he primary question is whether a reasonable person would perceive the detention to be a restraint on his movement 'comparable to [a] formal arrest,' given all the objective circumstances." *Ortiz*, 382 S.W.3d at 372; *Dowthitt*, 931 S.W.2d at 255.

There are four situations that have been recognized to escalate an investigative detention into custody: (1) a suspect is physically deprived of freedom in a significant way, (2) the police tell the suspect that he cannot leave, (3) the police create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted, and (4) the police have

18

probable cause to arrest a suspect, manifest that knowledge of probable cause to the suspect, and do not tell the suspect that he is free to leave. *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013) (citing *Dowthitt*, 931 S.W.2d at 255). The restriction of the suspect's movement must be tantamount to an arrest to rise to the level of custody. *Dowthitt*, 931 S.W.2d at 255.

At trial, Hernandez would have had the burden of proving that his statements were obtained during a custodial detention. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Hernandez raised the issue in his motion for new trial, which the trial court denied. A trial court's determination of "custody" presents a mixed question of law and fact. *Id.* at 526. "[W]e afford almost total deference to a trial judge's 'custody' determination when the questions of historical fact turn on credibility and demeanor." *Id.* at 526–27; *Shanklin*, 190 S.W.3d at 166 ("In considering a motion for new trial, the trial court possesses broad discretion in determining the credibility of the witnesses and in weighing the evidence to determine whether a different result would occur upon retrial.").

At the hearing on the motion for new trial, Hernandez testified that Officer Guerrero, the police officer who initially stopped him, explained that the traffic stop was for an expired registration. Officer Guerrero then asked him to get out of the vehicle. According to Hernandez, this action made him feel that he was not free to leave. About fifteen minutes later, Officer Morton arrived. Hernandez testified

that this felt like a long time to wait. According to Hernandez, Officer Morton's arrival "made me feel very uncomfortable like I was not free to leave at all." Hernandez did not testify that the police said or did anything to him that would objectively indicate that the traffic stop had evolved into something equivalent to a formal arrest; instead, he claimed that he "could tell" that he could not leave.

Meanwhile, Officer Guerrero testified at trial that he initially stopped Hernandez for an expired registration then, as he approached the vehicle, noticed a strong smell of "raw marijuana." Based on that smell, he asked Hernandez to get out of the vehicle. Officer Morton testified that he also noticed the smell of marijuana coming from the vehicle when he arrived. Officer Morton "went and stood with the—the gentleman at the back of the truck and spoke with him as Officer Guerrero completed a probable cause search of the vehicle." Officer Morton testified that Hernandez was not under arrest or handcuffed; they were "just making conversation" with each other. After asking Hernandez where he was going, he asked whether Hernandez could smell marijuana in the truck, and Hernandez replied, "Yes." Officer Morton testified that, when he asked Hernandez if there was any marijuana in the truck, "He shrugged his shoulders, said maybe and said probably."

We conclude that the objective facts do not indicate that this was a custodial interrogation requiring the *Miranda*-style warnings found in article 38.22.

Hernandez had not been handcuffed, and his movement had not been significantly restricted otherwise. The police had not said anything to him that could be considered an objective manifestation of a subjective belief of guilt. Hernandez and Officer Morton were standing together on the side of the road talking while Officer Guerrero searched the vehicle. Hernandez was not in custody; his purely subjective belief that he soon would be arrested does not alter our conclusion. *See Ortiz*, 382 S.W.3d at 373 (holding that "undisclosed subjective belief of the suspect that he is guilty of an offense should not be taken into consideration—the reasonable person standard presupposes an 'innocent person.'"); *see also Dowthitt*, 931 S.W.2d at 254–55.

We conclude that Hernandez has not met his burden to establish that his counsel provided him ineffective assistance of counsel or that the trial court erred by denying his motion for new trial on that basis.

## Conclusion

Having overruled Hernandez sole issue, we affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).